## Commonwealth v. Mayhew.

Dec. 17, 1943.

Hubert Meredith, Attorney General, M. B. Holifield, Assistant Attorney General, and James Park, Commonwealth's Attorney for appellant.

R. P. Moloney for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Certifying the law.

The appeal is by the Commonwealth for the purpose of obtaining this Court's certification of the law in respect to the admissibility in evidence of a confession made by the defendant concerning his fatal shooting of Chester Finnell. On November 14, 1942, Finnell, a bus driver for the Southeastern Greyhound Lines, drove his bus into the Lexington bus station a few minutes after 9:00 o'clock P. M. While Finnell was assisting porters to unload baggage from the bus, the defendant, Henry Mayhew, stationed himself about six feet in rear of Finnell and fired five shots from a pistol into Finnell's back, as a result of which he died on November 25, 1942. The shooting occurred at approximately 9:10 P. M.; Mayhew was arrested at approximately 9:15 P. M., and was booked at the police station at 9:20 P. M. He immediately was placed in a detention cell, where he remained until 11:00 o'clock A. M. the following day, which was Sunday. At that time he was escorted to an office in the police station, where, in the presence of two police officers, he was interrogated by Walter Kirkpatrick, district detective for the Commonwealth's Attorney for the Twenty-Second Judicial District. He was asked if he would make a statement concerning the shooting of Finnell. He was told that he did not have to make a statement, and that any statement he made might, and probably would, be used in evidence against him on his trial. No threats, promises, or inducements were made to obtain the statement, and it is apparent from his own testimony that he freely gave utterance to the facts contained in the statement. He testified in chambers as follows:

"Q. Were any threats made against you by Mr. Kirkpatrick or any one else at the police station, or after your arrest? A. No, nothing like that. They did not try to force me to make the statement . . . they asked me to make it. I didn't want to make it, but I did not refuse to make it.

"Q. Did you at any time tell them that you would not make the statement? A. No, I didn't say I

wouldn't make it. I didn't want to make it, but they didn't force me to make it.

"Q. Were you struck with a rubber hose or a black jack or anything like that while you were in there, or in the city jail? A. No, gentlemans, nothing like that.

"Q. Were you told that it would be better for you if you would make this statement? A. No, I don't think any one said anything like that, but they asked me if I would make a statement and I did not refuse to make it."

At the time the confession was made the defendant had not been arraigned before a magistrate.

Section 46 of the Criminal Code of Practice provides: "If an arrest be made without a warrant, whether by a peace officer or private person, the defendant shall be forthwith carried before the most convenient magistrate of the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate; * * *."

KRS 422.110 provides:

"(1) No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so.

"(2) A confession obtained by methods prohibited by subsection (1) is not admissible as evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case."

It is the contention of the defendant that, since he was not immediately arraigned before a magistrate, but was held in the detention cell and questioned previous to his arraignment, the confession was obtained by coercion because of the time, place, and surroundings, when the confession was made, and that such method of obtaining the confession was the use of wrongful means

within the meaning of the statute, although it is admitted that he was not plied with questions, or forced, threatened, or induced to make the statement. The legislature of 1942 amended the "anti-sweating" act, by which amendment the trial judge is designated the tribunal to determine the competency and admissibility of alleged confessions from evidence heard by him. Previous to the amendment, it was the duty of the jury to determine whether the confession was obtained by force, coercion, threats, or inducements under proper instructions of the Court. Since now the Court, and not the jury, must pass upon the question of admissibility of a confession, the confession, when admitted in evidence, carries far more weight than if it were submitted to the jury with the admonition that its obtention should be scrutinized carefully before acceptance of its truthfulness by the jury. Indeed, when admitted in evidence by the Court under the statute now in force, it is a virtual clinching of the case for the Commonwealth, if unfavorable to the accused. That being true, we are of the opinion that the method of obtaining every confession, under the statute as amended, should be scrutinized with extreme caution; and, if any doubt exists in the mind of the Court as to the admissibility of the confession after hearing the evidence, such doubt should be resolved in favor of the defendant and the confession rejected. Refusal of the officers having the custody of an accused to forthwith take the prisoner before a magistrate, for the purpose of breaking down the will of the accused, whereby a confession may be more easily obtained, will be looked upon with such disfavor by the Court as to render the confession inadmissible in evidence. It is well known to law enforcement officers, and to the courts, that holding a prisoner incommunicado for an unreasonable length of time will break his will and weaken his mind, sometimes to the extent that he will confess guilt, though the real facts and circumstances would profess his innocence.

But that is not to say that in every instance the prisoner is entitled to an immediate hearing before a magistrate, because courts cannot remain continuously in session twenty-four hours a day and seven days a week. And we do not agree with the contention that a police officer must refuse to take a statement from an accused who desires or is willing to make it, merely because he has not been formally arraigned and commit-.

ted to jail or admitted to bond, unless he has been held in custody longer than is expeditiously practicable to take him before a magistrate. In 6 C. J. S., Arrest, Sec. 17, subsec. b, p. 618, it is said: "It is ordinarily the duty of an officer after making an arrest, either with or without a warrant, to take the prisoner, within a reasonable time, before a justice of the peace, magistrate, or other proper judicial officer having jurisdiction, in order that he may be examined and held, or dealt with as the case requires. It is sometime said that this must be done immediately, or forthwith, or without delay. These requirements are construed to mean no more than that this duty must be performed with all the dispatch and promptness possible under the circumstances. Accordingly, an officer may detain a person arrested in custody for a reasonable time until he can conveniently and safely take him before a magistrate, if the circumstances are such as to preclude an immediate examination, hearing, or trial, as where the arrest was made at night or on Sunday, when the court was not in session; where the prisoner himself, occasions the delay, as where he is drunk; or where the arresting officer is unable to find a judicial officer. Similarly, a person arrested may waive his right to be taken before a magistrate, or consent to accompanying an officer without being taken before a magistrate. An officer may not detain a person arrested in custody longer than is reasonably necessary under the circumstances, or arbitrarily refuse to place a formal charge against a prisoner, thus preventing him from obtaining bail; nor may an officer detain the person arrested for any purpose other than to take him before a magistrate, and, accordingly, it has been held that a peace officer may not keep a person arrested in his custody for an unreasonable length of time in order to procure evidence from him, or to obtain his confession."

In Meyers v. Dunn, 126 Ky. 548, 104 S. W. 352, 354, 13 L. R. A., N. S., 881, it is said: "While it is true that sections 48 and 50 (and section 46), Criminal Code of Practice, provide that an offense charged against one brought before a magistrate shall be forthwith examined into by that officer, the word "forthwith" is not necessarily construed as meaning immediate. The construction given generally by the courts to the words "immediately" and "forthwith," whether occuring in contracts or statutes, is that the act referred to should be

performed within such convenient time as is reasonably requisite, and what is a reasonable time is to be determined by the facts of the particular case in hand. Lincoln v. Field, 54 Ark. 471, 16 S. W. 288; Pennsylvania Ry. Co. v. Reichert, 58 Md. 261; Pittsburgh, V. & C. Ry. Co. v. Commonwealth, 101 Pa. 192; Martin v. Pifer, 96 Ind. 245; Kent v. Miles, 65 Vt. 582, 27 A. 194. As said in Pepper v. Mayes, etc., 81 Ky. [673] 678: 'But the authority to arrest, to try, and to require bond necessarily implies that the accused may be restrained of his liberty, within a reasonable limit, pending or preparatory to such examination. The law does not require a judicial officer to hold his court at all hours of the night and day, nor does it require that he should do violence to his conscience by holding an examining court on the Sabbath, although the proceeding of an examining court held on that day may be valid.' ''

In Commonwealth v. McClanahan, 153 Ky. 412, 155 S. W. 1131, 1134, Ann. Cas. 1915C, 132, the Court said: ''We do not mean to hold that a voluntary confession may not be made by one charged with crime and under arrest, for such confessions have often been admitted and will yet be admitted by the courts as competent, but it should come from the defendant under such circumstances as show it to be made of his free will and with full and perfect knowledge of its nature and consequences, free from the dictation or coercion of others.''

Although, as above indicated, we will be reluctant under KRS 422.110, supra, to approve the admission of a confession in evidence where there is doubt concerning its voluntary character, yet if it is shown beyond doubt that the accused uttered the confession perfectly free of any coercion, threats, or inducements, we see no reason to reject the confession as evidence in the case. But the question of admissibility must be determined in each instance in the light of the facts and circumstances surrounding the particular case. In the instant case the shooting occurred on Saturday night at approximately ten minutes after nine o'clock. No court could be expected to be in session at that hour on Saturday night. Nor is it reasonable to expect a court or magistrate to be available for business on the Sabbath day. And, while we would condemn the questioning of the accused while in the custody of the officers before being brought before the magistrate, nevertheless, when the evidence as to the circumstances surrounding the making of the

confession show clearly, as in this case, that the accused before starting his confession was merely asked if he desired to make a statement, and was cautioned that it might be used against him on his trial, and that he did not have to make a statement unless he wanted to, and there is no evidence in contradiction of these facts, we think it proper to admit the confession in evidence. Had the shooting occurred on any night other than Saturday, and the police officers detained the accused for a corresponding length of time when a magistrate or court was available before which to arraign him, we are inclined to the opinion that such fact alone would be sufficient for the Court to conclude that the prisoner was detained an unreasonable length of time for the express purpose of obtaining his confession, or of obtaining information to be used against him on his trial. But we are not constrained to the view that every utterance of an accused while under arrest, and before arraignment, must be rejected by reason of these facts alone.

We are impressed with the opinion of the Court rendered in explanation of his action in sustaining the motion for a new trial, and concur with him in his opinion for the most part; but we believe that in the facts and circumstances of this case the reasoning of the opinion has been stretched a ''mite'' too far in his endeavor to secure for the defendant a fair and impartial trial. In his opinion the Court cited two cases of the Supreme Court of the United States, viz., McNabb v. United States, 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed.——, and Anderson v. United States, 318 U. S. 350, 63 S. Ct. 599, 87 L. Ed. ——, in support of his decision. But we think that the facts and circumstances in both of those cases are not comparable to those of the instant case. There the prisoners were held for several days, during which time they were subjected to rigid interrogation by plying of questions; whereas, the accused in this case was not detained for an unreasonable time, (considering the fact that the shooting occurred on Saturday night and his detention was on Sunday), and he was not plied with questions, coerced, threatened, or induced by any other wrongful means. It cannot be said that we are not giving any weight to the findings of the Chancellor in respect to the facts and circumstances surrounding the giving of the confession, because the defendant and Commonwealth are in substantial agreement as to what occurred, and our decision is based upon

the defendant's recitation of the facts and circumstances. That being true, the question resolves itself into a review of the soundness of the decision of the Court on a question of law.

Such being our views, we are of the opinion that the Court properly admitted the confession under consideration in evidence, and that he was in error in sustaining the defendant's motion for a new trial; and the law is so certified.

Whole Court sitting.

Judge Sims dissenting.

I dissent in this case because common sense and experience teach me that appellee's confession was not made voluntarily by him, but was the result of coercion on the part of the officers. There is no rule of law known to me which prevents a judge from using his common sense in arriving at a judicial conclusion.

Mayhew had killed a man in a public place in the presence of many people and the officers knew he had committed the act. Their bringing him before them on the following morning, instead of taking him before a magistrate as provided by Secs. 27 and 46 of the Criminal Code of Practice, could have been only for the purpose of interrogating him in the hope of coercing from him statements derogatory to his interest. These were experienced police investigators, one being a lawyer, and it cannot be doubted they were fully cognizant of Secs. 27 and 46, as are practically all police officers.

The alleged confession begins: "By Walter A. Kirkpatrick: Henry, I want to talk to you about this case and I want to take a written statement from you." Then follow seven typewritten pages wherein the accused evidently answers questions which were asked him. It is true the officers did not let the questions appear in the statement, but no one can read it without immediately being impressed that Mayhew's statements were made in answer to Kirkpatrick's questions. The fact that the statement fails to include the questions asked leads the mind to wonder if they were not omitted in order to obliterate all trace that the accused was plied with questions.

It was written in McClain v. Com., 284 Ky. 359, 144 S. W. (2d) 816, that 160 questions asked a prisoner by

the county attorney did not amount to plying him with questions. But there the accused was not shown to be in a nervous condition and his answers were voluntary and there was no evidence of coercion. Here, just the opposite appears. We said in the McClain case that a single question accompanied by a threat may violate the statute. Here the accused was in no mental condition to answer questions. He testified he did not want to answer them, but he did not refuse to answer them. When the officer proceeded to question Mayhew while in this nervous condition rather than take him before a magistrate as required by the Criminal Code, I am inclined to the view that this amounted to plying him with questions and that his answers were coerced.

The preamble of the alleged confession that the officer warned the accused that his statement would be used against him is almost sufficient to convince me, as it must have the Hon. Chester D. Adams, the Trial Judge, that it was not voluntarily made. Each and every one of the seven pages of the confession is signed by the accused. It is indeed unusual that a layman would voluntarily sign each page of his statement. The testimony of Mayhew taken in chambers before Judge Adams on the trial is that he did not want to make this confession but that he did not refuse to make it. Therefore, it follows that the trial judge was correct in ruling that the confession was coerced. Otherwise, why would an accused make statements derogatory to his interest when in the custody of officers which he did not want to make?

Judge Adams wrote a full and learned opinion wherein he reviewed the law relative to the admissibility of confessions from the 16th century down to date. In the course of that opinion he wrote:

"What is the compulsion or coercion which keeps a confession from being the free, spontaneous exercise of the will? There may be compulsion or coercion of time, place, surroundings, circumstances, fear, hope or overreaching. A statement may have all the appearances of being voluntary and yet this necessary element may be lacking by reason of some subtle influence which working upon the mind destroys its voluntary nature. This need not be physical force. It may even be a hope of securing a better break and thus not voluntary because prompted by fear of worse results if he does not

speak. Thus a manifest kindness may be the force of fear which destroys the voluntariness of a statement.

"There may be the coercion of time as where his arraignment before a magistrate is delayed to get a confession, or of place and surroundings as where he is at the police station surrounded by police officers; or of circumstances as where he is afraid not to confess because an investigation may result in turning up other crimes of which he is guilty. This coercion of fear prevents the confession from being an exercise of free will. The coercion of hope whereby the accused confesses because he hopes to gain some consideration, the coercion of persuasion whereby he is led by artful questioning to disclose more than he intended, the coercion of over-reaching where a stronger mind dominates a weaker one, may each be as effective in destroying the voluntary nature of a confession as the coercion of fear which is the result of actual or threatened physical violence.

"A confession to be voluntary must come from a free, unhampered will. The will must not be acted upon by hope or fear, must not be dominated or over-reached by a stronger will or persuaded or influenced by anything that interferes with its free operation.

"When the arraignment of an accused before the proper officer is delayed, during which time he is kept in custody, denied the benefit of counsel, the advice of friends or the aid of relatives, does not this of itself have a tendency to break down and destroy the free, voluntary operation of his will? Is not this the purpose for which he is so held?"

The alleged confession was not in the language of the accused but in that of the officers, concerning which Judge Adams wrote:

"The statement prepared by Mr. Kirkpatrick and signed by the defendant is very clear and systematic. This shows that in writing it the attorney couched it in the language his education and profession had trained him to use. This was not for the purpose of changing the meaning of any statement made by the defendant, but it is unfortunate that it was not drawn in the exact language used by the accused. Mr. Kirkpatrick stated Mayhew was very nervous and he said 'I was still upset and nervous, all tore to pieces, and, I can truthfully say that I was not capable of making a statement at this

time.' If the exact language of the accused had been reduced to writing I am sure judging from his rambling, excited testimony in court, that it would have shown on the face of the statement that he was upset, nervous and perhaps not capable of making a statement.

"When officers delay taking an accused person before a magistrate forthwith but keep him in custody for the purpose of interrogating him and getting a statement or confession, they are in reality creating a court of their own in which to try him; a court in which he is not permitted the benefit of counsel, or the advice or aid of friends and relatives and his constitutional rights are not protected. This is all in violation of the Constitutional provision, 'No courts save those provided for in this Constitution shall be established.' "

Due to the far-reaching effect the majority opinion attaches to a confession, it says the trial court should exercise extreme caution and not admit the confession should there be any doubt that it was freely and voluntarily made, which doubt should be resolved in favor of the accused. However, the majority paid but slight attention to the ruling of Judge Adams, who was on the ground and saw the accused and the officers when they were testifying before him in chambers. Yet he was passing on a question of fact as to whether the confession was voluntarily made, and perhaps knew the officers and was likely acquainted with their subtle methods of wringing a confession from a prisoner under the guise of obtaining from him a voluntary statement. I would give the greatest heed to the ruling of the trial judge in such matters, and never disturb it unless the evidence heard by him in chambers conclusively showed that he erred in his ruling.

In his splendid opinion the learned trial judge quotes from authorities showing how police officers are taught and coached to get around the statute against coercing confessions from prisoners, such as advising them not to call a lawyer for fear the lawyer will use the information gained by conference against his client; that he has nothing to fear if innocent. Courts should be vigorous in curbing such methods and should remember that there is such a thing as mental coercion which is more powerful than the rubber hose or the padded black-jack, neither of which is supposed to leave marks on the victim.

It is unconstitutional for the police to set up their own courts and try accused persons without an impartial judge presiding and without the benefit of counsel. Regularly constituted tribunals should put an end to this abominable practice by the police.