## Reed v. Commonwealth.

November 29, 1949.

Rehearing Denied February 24, 1950.

Loraine Mix, Judge.

C. Ewbank Tucker for appellant.

A. E. Funk, Attorney General, and Charles Anderson, Jr., Assistant Commonwealth's Attorney, for appellee.

MORRIS, COMMISSIONER—Affirming.

Appellant was convicted of murder, the jury fixing the penalty at death. On his appeal it is contended that the verdict is contrary to the law and evidence, and that the court erroneously and to his prejudice admitted appellant's confession made out of court. KRS 422.110 makes inadmissible any confession of accused obtained by the plying of questions, or extortion of information to be used against him.

The evidence shows that appellant and Louise Young, prior to the latter part of December 1943, had been living together as man and wife. An uncle testified that it was the custom of Louise to visit his home in the country during the holidays, and that she had failed to come to his home during the 1943 Christmas Season. An inquiry at the home, 124 South Eleventh Street, Louisville, showed she was not there. He inquired of appellant as to her whereabouts and was told that she had gone to Detroit without taking any of her belongings. The uncle said that appellant and Louise claimed they were married. He had sold them some insurance; he also said that Louise had a sizeable sum of money. There was no further development of these latter circumstances.

About July 21, 1948, a plumber at the direction of the owner, went to the premises to make some repairs in a water pipe, and found it necessary to take up some pipe which led through a coal shed. In reaching this pipe he discovered bones and a skull. Without going

into details, persons experienced in such matters testified that the bones and skull were those of a human being, and by particular markings of the teeth the skull was identified as that of Louise Young.

Following the discovery the police department and the coroner were notified, and on the same day appellant was taken into custody and questioned; he told them that Louise had left him and gone to Detroit and he was released. On investigation by officers it developed that she was not in Detroit, and the officers later took appellant into custody, where he made a statement which was signed by appellant on July 24, 1948. This statement was substantially as follows:

"Back in 1935 I met Louise Young who was around 19 years old. After a couple of years she started living with me as my common law wife. We lived together for about six years. During the last couple of years * * * she was also running around with a fellow named George Smith. One night in December 1943, there was a party at my house, I don't remember all the people who were there, but I do remember Wilma and Clint Willis. George Smith and Anna Thomas and a few others were there. We all had a few drinks. Shortly after midnight Louise and George got into a fight and the rest of the people left because he started the disturbance. Then Louise and George both jumped on me, and George stabbed me in the left arm, and Louise was hitting me. I was fighting them with my fist until George got his knife, and I picked up something and hit Louise with it on the left side of her chest and she fell. George and I tried to bring her back but she was dead. I was afraid and asked George what we were going to do with her, and he said we would do away with her by burying her. George carried her down the steps and towards the back. I left home and didn't come back for a week. I saw a spot in the shed where the ground was fresh. Day before yesterday the plumber came to fix a pipe for Mr. Pollock and they dug up some of the bones in the shed where she was buried. The police came and dug up the rest of the bones, and they questioned me; I didn't tell them anything about Louise then. Tonight they came and arrested me and brought me to headquarters, where I have made this statement of my own free will and without any threats or promises, and have read it before signing and it is true."

The officers who took appellant in charge testified that in obtaining the statement they did not ply appellant with unnecessary questions; made no threats or used any violence. They say that after they had informed appellant that Louise was not in Detroit, but had been buried in the coal shed, he volunteered the statement.

There was no effort on the part of the accused, as far as the transcript shows, to prove his statements as to the party at the home in December 1943. On the other hand the Commonwealth introduced three of the four witnesses named in the statement, and all testified that they were not present at the December or any other party. Smith testified that he was in the Armed Service in December 1943, and was not in the United States. His testimony makes it fairly clear that he was the George Smith to whom appellant had referred. From these witnesses, and others who testified for the Commonwealth, and without contradiction, it is to be gathered that appellant was jealous and had engaged in quarrels with Louise, and on at least one occasion had struck or beat her, and more than once had threatened her life.

We note that the court, in compliance with the statute, supra, first heard the evidence in respect of the confession in chambers, and we think correctly held that it was obtained without threats, promise, duress or the plying of questions, and appellant did not contradict this testimony. In fact he did not testify himself and only offered one witness, who merely gave him a fair reputation as to peace and quietude. It is not seriously argued by counsel for appellant that the confession was drawn from him by means denounced by the statutes, nor is it argued that the material statements contained in the confession are untrue.

The chief argument relates to a delay in taking appellant before an examining court for a hearing, and that during the time he was under arrest he was without counsel. It is not shown that either his arrest or being held in custody interfered with his right to have the benefit of counsel.

It is said in brief for appellant that instead of taking appellant before a magistrate, the officers kept him in detective headquarters from "nine o'clock that morn-

ing until four o'clock that afternoon." We assume this has reference to the second inquiry which led to the confession. We do not find that the record bears out this assertion. As we gather it appellant was first taken into custody on July 23, and on his statement that Louise was in Detroit he was released. After learning that she was not in Detroit he was arrested and taken into custody the next night; we find no reference as to the matter of time he was retained in headquarters during either interview. Nor do we find that he was held in custody for ten days before being taken before a magistrate for hearing. Even had this been shown, the fact would not have vitiated or made inadmissible the statement made by appellant. Commonwealth v. Mayhew, 297 Ky. 172, 178 S. W. 2d 928.

The statement made by appellant does not disclose what instrument was used by appellant to strike the blow which took the life of Louise Young. In the brief it is stated that appellant struck her with a chair, and it is contended that the verdict is contrary to the law and evidence, because the confession manifested a homicide of the degree of voluntary manslaughter or a taking of life in his defense. Here the plea was one of not guilty; the contention would be of some force if it were not for the fact that appellant's version of the alleged altercation was not borne out, but on the other hand witnesses, who he says were present during the beginning, testify that they were not present, and Smith says he was never in the home. The jury was not required to believe all statements made in the confession. Simmons v. Com., 207 Ky. 570, 269 S. W. 732. The jury had the right in reaching a verdict to consider the uncontradicted testimony as to threats against the life of Louise Young, the assaults on her, and the evidence of extreme jealousy, and it may be submitted that the testimony outside and beyond the confession waranted a verdict of guilty and the administration of the severe penalty.

Since the evidence, extrinsic of the confession, was of circumstantial nature, and the penalty severe, we have looked to the instructions given the jury, and find that the court circumspectly gave instructions covering every possible phase of the homicide, willful murder, voluntary manslaughter, self-defense, a correct instruc-

tion as to death ensuing from the use of a deadly weapon, and, of course, the reasonable doubt instruction. We observe also that his rulings on testimony to which objections were interposed were fair and correct. On these latter points no comments are made in brief.

After careful consideration of the whole case we fail to find prejudicial error, or any which would justify us in decreeing a reversal of the judgment.

Judgment affirmed.