## ASHCRAFT ET AL. *v.* TENNESSEE.

No. 381.   Argued February 6, 7, 1946.—Decided February 25, 1946.

*James F. Bickers* and *Grover N. McCormick* argued the cause and filed a brief, and *William A. McTighe* entered an appearance, for petitioner.

*Nat Tipton,* Assistant Attorney General of Tennessee, argued the cause for respondent. With him on the brief was *Roy H. Beeler,* Attorney General.

Mr. Justice Black delivered the opinion of the Court.

Mrs. Zelma Ashcraft was murdered in Shelby County, Tennessee. The petitioner Ware was convicted for the murder. The petitioner Ashcraft, husband of the deceased, was convicted for being an accessory before the fact. The Supreme Court of Tennessee affirmed the convictions. We reversed the judgment as to Ashcraft, vacated it as to Ware, and remanded the case to the Supreme Court of Tennessee for further proceedings not inconsistent with our opinion. *Ashcraft* v. *Tennessee,* 322 U. S. 143. The state supreme court then ordered the case remanded to the Criminal Court of Shelby County with the same directions as to further procedure. The petitioners were again convicted and the state supreme court affirmed.

Our reversal of Ashcraft's first conviction was on the ground that his conviction resulted from a trial so conducted as to deprive Ashcraft of due process of law in violation of the Fourteenth Amendment. At that trial the State had been permitted to introduce in evidence an alleged confession which had been obtained from Ashcraft after thirty-six hours continuous grilling by investigating officers, who were holding him incommunicado in the county jail. This alleged confession was in large part written but Ashcraft had neither written nor signed it. Ware's conviction had also rested on a confession, the admission of which as evidence he had challenged as a denial of due process. Without passing on the constitutional question raised by Ware, we vacated the judgment against him for other reasons stated in our opinion. In the joint trial of both petitioners which resulted in the judgment now before us, the State again introduced Ware's confession. His objection to it based on the due process clause was overruled. Before reaching the issues raised by Ware, we shall dispose of the questions which Ashcraft now raises.

In our first opinion we pointed out in detail alleged incriminatory admissions used to convict Ashcraft and the circumstances under which he had made them. In summary those statements and circumstances were these. On a Saturday at 7:00 P. M., nine days after his wife was found dead, officers went to Ashcraft's home and took him to a fifth-floor county jail room. There he was held without rest or sleep until 7:00 o'clock Monday morning, or 36 hours. During the entire time Ashcraft was subjected to a constant barrage of questions and charges. According to the officers' testimony he, for about 28 hours, consistently denied any knowledge about, or complicity in, the crime. The officers swore, however, that after 11:00 P. M. Sunday night Ashcraft finally confessed that he knew who killed his wife, but at the same time denied

that he had done it. According to this testimony Ashcraft said that Ware had come to his home before daylight, just as Mrs. Ashcraft was getting in an automobile to take a journey; that he watched Ware force Mrs. Ashcraft to drive the automobile away from home with Ware accompanying her; that Ashcraft, after making slight but ineffective protests went back to his room, later went to work, and that he made no report to the officers but kept his knowledge secret because he was afraid of Ware. Later on the Sunday night that Ashcraft was being interrogated in the jail, a court reporter was summoned and he, according to the evidence, took down complete confessions of guilt given both by Ware and Ashcraft. The reporter completed transcription of his notes about 7:00 o'clock Monday morning. These transcribed notes were offered as to both the petitioners in the first trial. Witnesses at that trial, including Ashcraft's doctor, also swore that both Ashcraft and Ware had been caused to strip for complete physical examinations. The only apparent purpose of this was to counteract any later claim by Ware or Ashcraft that their alleged confessions were the product of physical mistreatment.

At an early stage in the new trial, resulting in the conviction we are now reviewing, the prosecuting attorney announced that he intended to use this jail evidence again, "about everything except the confession." And that was done. The witnesses for the State in the first and the second trials were the same. Construing our mandate as prohibiting only the admission of the written unsigned confession, the trial judge allowed the jury to listen to testimony narrating everything else that took place during the entire 36 hours Ashcraft was questioned with no one present but his inquisitors and those summoned by them to buttress their future evidence.

An inspection of the record shows beyond any peradventure of doubt that the testimony used in the last trial

showing what took place during Ashcraft's examination might well have had the same practical effect on the jury the written unsigned confession might have had, had it been introduced. For the circumstances leading up to it were narrated in detail both with reference to Ware and Ashcraft. Even the doctor who examined Ware reported not only on Ware's physical condition but also testified in the same breath about his examination of Ashcraft.

Respondent claims that this testimony did not harm Ashcraft and that Ashcraft's supposed statement that he knew who killed his wife was exculpatory. In fact, in the context of this case, that statement was the strongest possible evidence against Ashcraft, who was charged with having been an accessory before the fact. For ten days following his wife's death, Ashcraft had purported to help the officers in their efforts to solve the crime, and for the first twenty-eight hours of his jail interrogation he had not only stoutly maintained his own innocence whenever it was questioned, but had also denied any knowledge whatever as to the identity of the murderer. To admit knowledge of the murder and of who committed it after these protestations by him would for most people be the equivalent of a confession of guilty participation in advance of the crime. Wilful concealment of material facts has always been considered as evidence of guilt. And statements denying guilt followed by a confession of knowledge of who the guilty person was may carry the strongest implications of a guilty knowledge. Cf. *Bram v. United States,* 168 U. S. 532, 562. This is particularly true where a husband admits that he has, against the strongest pressures, deliberately concealed the identity of his wife's murderer for ten days.

We see no relevant distinction between introduction of this statement and the unsigned alleged confession, except the possibility that the admission of this long-concealed knowledge was perhaps a more effective confession

of guilt than the written unsigned alleged confession would have been. All the reasons given for reversal of the judgment against Ashcraft in the first case, which we need not repeat, apply with equal force here.

The State has asked that if Ashcraft's case is reversed we follow the same course as to Ware that we did in the first case, and vacate the judgment against him. For this reason, as well as the reasons given in our former opinion, we do not pass on the constitutional question raised by Ware concerning his alleged confession, but vacate the judgment of the Supreme Court of Tennessee affirming Ware's conviction.

We need not now decide other questions that have been argued except one contention mentioned below.[1]

The judgment against petitioner Ashcraft is reversed and that against petitioner Ware is vacated. Both cases are remanded to the state supreme court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE FRANKFURTER joins in this opinion on the basis of the decision in *Ashcraft* v. *Tennessee*, 322 U. S. 143.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[1] The petitioner Ashcraft contends that in the oral argument before this Court, when the first conviction was being challenged, the State's attorney admitted that the confession was the only evidence against Ashcraft, and since we mentioned this fact in our opinion, our mandate and the state supreme court's mandate, which adopted our mandate, in effect forbade a new trial of petitioner. We do not think our mandate lends itself to such an interpretation. As to the state supreme court's mandate, that court has construed it by affirming petitioners' second convictions. The state court's construction of its own mandate is final.