16011

STATE v. GIDRON

(45 S. E. (2d) 587)

*Mr. Furman R. Gressette,* of St. Matthews, for Appellant,

*Mr. Julian S. Wolfe,* Solicitor, of Orangeburg, and *Mr. L. Marion Gressette,* of St. Matthews, for Respondent,

November 14, 1947.

OxNER, J.: Upon an indictment charging him with the murder of George D. Tilley on April 30, 1947, appellant, a Negro 19 years of age, was tried on May 26, 1947. He was found guilty and a sentence of death by electrocution imposed. The errors assigned relate to (1) the method followed in examining some of the jurors on their *voir dire*, (2) the argument of the solicitor, and (3) the charge of the Court with reference to confessions.

Before discussing the questions raised by the exceptions, we shall briefly review the testimony. The deceased was Sheriff of Calhoun County. On April 30, 1947, he and some other officers were investigating the violent death of a Negro named Riley. On information which had been received, they decided to interrogate appellant. During the late afternoon of that day the deceased and a magistrate's constable arrested appellant while he and some other Negroes were in a field in the Lone Star section of Calhoun County. This constable testified that after placing appellant, whom he had known for six or eight years, on the rear seat of the car, he and the Sheriff, occupying the front seat, drove to Riley's store where they made some further investigation of the *Riley case;* that they then drove to Week's store; and that after remaining at this store for a few minutes, he left the Sheriff to go home and about the same time the Sheriff, with the appellant on the front seat beside him, drove off in the direction of St. Matthews. It was then about dark. Around 8 o'clock that night the Sheriff's car was found approximately three miles from St. Matthews on the highway between that town and Fort Motte. The car was almost in the ditch on the right side of the road and from the point where the car left the pavement there were marks extending

back a distance of approximately 15 feet. The Sheriff's belt, holster and pistol were found on the front seat of the car and there was considerable blood on the driver's side. Prior to this time the Sheriff had been removed by some one to the hospital at Orangeburg where he remained until his death on May 7th. The attending physician testified that he died from wounds caused by a bullet which entered the body on the right side of the chest.

Early on the morning after the Sheriff was shot, appellant, still handcuffed, was apprehended and arrested at a farm house and carried to the State Penitentiary in Columbia, where from time to time he was interrogated by various officers but made no confession until May 8th. Captain Ansel of the State Constabulary testified that about noon on May 8th, he visited appellant at the penitentiary; that after talking to him a few minutes, appellant indicated a desire to make a statement; that he warned him that he did not have to make a statement and any made would be used against him; and that without any promise of reward or threats of any kind, appellant said "he wanted to get it off his mind". He was requested to talk into a recording machine. Captain Ansel further testified that appellant then stated that about 5:00 p. m. on April 30th, he was arrested by the Sheriff and a magistrate's constable while working in a field; that he had a pistol in the right front pocket of his trousers; that after placing him in the rear seat of the car, the two officers got in front and drove to Riley's store; that he was wearing combat boots issued to him while in the Army and during this trip he moved the pistol from his pocket and placed it inside the sock and boot on his right foot; that at Riley's store he was directed to remove his left boot and put his foot in a track near a car shed; that the officers then carried him to Weeks' store where he was searched but no examination was made of his boots; that after remaining at Weeks' store a few minutes, the constable left and the Sheriff then placed him on the front seat of his car and proceeded towards St. Matthews; that the Sheriff

commenced interrogating him again as to the *Riley case* and shortly thereafter placed handcuffs on him, turned the car around and started back in the direction of the Lone Star community; that after driving a short distance the Sheriff turned around the second time and again drove toward St. Matthews; that while being driven in this direction, he pretended that he was going to scratch his right leg, suddenly pulled the gun out of his right boot and shot the Sheriff; that the Sheriff immediately applied the brakes and about the time the car stopped he jumped out and ran across a field; that as he ran the Sheriff shot at him several times but missed him; and that he then proceeded to the house where he was arrested early the next morning.

Captain Ansel testified that after appellant made this statement, he inquired about the gun and appellant stated that he had dropped it in a field; that after instructing a stenographer to transcribe the statement which had been made, he took appellant along with some officers to the field where appellant said he had dropped the gun, but after a thorough search of the field they were unable to find the gun; and that appellant was then carried back to the penitentiary where the statement, which had meanwhile been transcribed, was read to appellant and he freely and voluntarily signed same.

Appellant was the only witness offered by the defense. He said that he had recently been discharged from the Army and while in the service purchased this pistol in Oklahoma. His testimony as to the events during the afternoon and night of the shooting does not conflict materially with the statements made in his alleged confession except as to what transpired immediately before the shooting. He testified that shortly after he and the Sheriff left Weeks' store, the Sheriff commenced questioning him about the *Riley case,* which he says he told the Sheriff he knew nothing about; that after this interrogation had continued for some time the Sheriff started cursing him; that finally the Sheriff struck him on the nose several times with the right hand while driving with his left hand; that he then "slipped toward the door";

that at this time the Sheriff placed his hand on his gun which was on the right side; that he did not know what the Sheriff was about to do and in defense of himself shot the Sheriff. He admitted signing the statement prepared under the direction of Captain Ansel but said that at the time he did not know what it contained. He testified: "(Captain Ansel) told me to sign it (the statement). Told me to read it. I looked at it; too psychology for me. I did not know all those words on it. I don't know all those words, I could not say them. Psychology * * * Told me to sign it. Read it out to me. I wasn't going to sign, all those phychology words I did not know what they mean."

We shall first determine whether the Court erred in not separately swearing and examining some of the jurors on their *voir dire*. The trial Judge states in his order settling the record for appeal that the following occurred: "The Court further recalls that when the case was called and counsel for both sides answered ready for trial, that when the first few jurors were called, the Court on his own motion inquired of those jurors without their being put on oath, as to whether or not they were related to the deceased Sheriff Tilley and whether or not they could give a fair and impartial trial; and all such jurors as were chosen by counsel for the State and defendant up to that time answered that they were not related and could give a fair and impartial trial. Thereafter counsel for the defendant, speaking through Mr. Furman R. Gressette, when certain jurors were called requested that they be sworn and examined upon their *voir dire* which was done. After a number of these had been so sworn and accepted and the panel had been completed, Mr. Furman R. Gressette requested that those accepted on the jury who had not been sworn and examined theretofore on their *voir dire* be so sworn and examined. Whereupon the court ascertained the names of the jurors who had not been so sworn, had them all stand up, addressed each juror by his name and swore them on their *voir dire* together, Mr. Furman R. Gressette at this time requested

that each one of them be separately called and sworn, which was done. The panel was then sworn as a body and the case proceeded to trial."

The record further discloses that in examining collectively the jurors who had not been previously sworn, the usual questions were propounded to them and all answered in a manner showing that they were competent. After this was done, the Court said: "Now, gentlemen, is that satisfactory? If it is not, I want to give the defendant every right." There was no response by counsel. There is no contention now that any of these jurors were disqualified. Appellant's position is that although counsel made no objection, it was error for the Court to swear and examine any of these jurors collectively.

It appears that in some jurisdictions prospective jurors are examined as to their qualifications separately and in other jurisdictions collectively. This may be due to a difference in the applicable statutory requirements of the various States. In some jurisdictions it is error to refuse to allow individual examination. 31 Am. Jur., Jury, Section 105, page 635; 50 C. J. S., Juries, § 276c. In this State, under the terms of Section 637 of the 1942 Code, it is the duty of the Court, on motion of either party, to examine under oath the prospective jurors with respect to their competency. It is not error if the Court on its own initiative fails to make such examination.

It is unnecessary to now determine whether it would constitute reversible error to refuse a request for a separate examination of each juror on his *voir dire*. Certainly in capital cases it is the better practice to examine the jurors in this manner even though a separate examination is not requested. But in the instant case no request for a *voir dire* examination was made until after several jurors had already been drawn and accepted. The prospective jurors thereafter drawn were separately examined. After the panel was completed, those who had not been previously

examined under oath were sworn and the usual questions respecting their qualifications were propounded to them as a body. The Court inquired if this procedure was satisfactory and there was no response. Under these circumstances it is apparent that any right to a separate examination was waived. But in view of the gravity of the offense involved, we shall inquire further whether appellant was prejudiced in any manner. All of those jurors, when each question was propounded to them collectively, gave satisfactory answers respecting their qualifications. We think it is clear that the method followed in the examination of these jurors resulted in no prejudice to appellant. As previously stated, it is not contended that any of the jurors who sat on this case were disqualified in any particular. It is further asserted that one of the jurors was never put on his *voir dire* but this statement is not sustained by the record.

The next assignment of error relates to the argument of the solicitor. Appellant's counsel states that "the solicitor held up before the jury a written instrument purporting to be a confession signed by the defendant, and in substance he based a portion of his argument to the jury on the said instrument, which was never introduced into the record, in which he attacked the testimony of defendant." No objection to the solicitor's argument was raised until the conclusion of the charge when appellant's counsel stated: "Your Honor, that paper not having been put in the record, we don't think that the remarks to the jury of Solicitor Wolfe or anybody else about it would be competent, because the statement was not put in evidence. We think that any remarks that the Solicitor made about that should not be considered by the jury." In the order settling the record for appeal the trial Judge said: "In reference to what transpired during the solicitor's argument, I think it is my duty to state that I observed very carefully every step in the case and listened attentively to arguments of counsel to the jury, and I do not recall the Solicitor having waved the alleged statement or confession before the jury in his argument."

It is well settled that we are bound to accept the statement of the trial Judge as to what transpired. *Kneece v. Hall et al.,* 138 S. C. 157, 135 S. E. 881; *Chesser v. Tyger River Pine Co.,* 155 S. C. 356, 152 S. E. 646; *State v. Mishoe et al.,* 198 S. C. 215, 17 S. E. (2d) 142. It has also been repeatedly held that the "conduct of a trial is left largely to the discretion of the presiding Judge, and this Court will not interfere unless it clearly appears that the rights of a complaining party were abused or prejudiced in some way." *State v. McGill,* 191 S. C. 1, 3 S. E. (2d) 257, 260.

In the direct examination of Captain Ansel, the State did not undertake to introduce in evidence the alleged written confession signed by appellant. The witness was merely examined as to the verbal statements which appellant made to him. On cross-examination, appellant's counsel inquired about the original of the written confession. The witness replied that the original had been turned over to Sheriff Whetsone. He was then asked to refer to the solicitor's copy and give the date. Thereupon the solicitor took a copy which he had in his file and handed it to the witness in the presence of the jury. The witness was thereafter subjected to a vigorous cross-examination with reference to the alleged written statement, but it was never introduced in evidence.

It does not appear from the record that the solicitor read from the statement during his argument. The fact that appellant signed a written statement is not disputed. His contention was that he did not know or understand the contents. Captain Ansel testified that the statement contained in substance the same version as orally given to him by appellant. It was, therefore, not improper for the solicitor to argue the fact that appellant had signed a written statement. The contents were not divulged. It was appellant's counsel who first caused the statement to be exhibited in the presence of the jury. We are unable to see any prejudicial error in the conduct of the solicitor.

The remaining question raised by the exceptions relates to the charge of the Court as to the elements necessary to make a confession voluntary. It is contended that the Court omitted to charge that a confession is not voluntary if procured through fear or by force or threats of violence. The trial Judge charged that any statement or confession made by a defendant could not be considered unless it was shown to the satisfaction of the jury beyond a reasonable doubt "that the person making that statement made it freely and voluntarily, of their own accord; that they were not promised any reward or hope of reward, or any favor; and that they were not intimidated or put in fear of harm. In other words, it must be shown beyond a reasonable doubt that there was nothing offered to such a person making such a statement and that he did not make it out of fear or the hope of benefit."

We do not find in appellant's testimony any suggestion that the alleged confession was extorted through fear or by threats of physical violence. But assuming that his testimony is susceptible to an inference to that effect, we think this element was sufficiently covered in the charge which we have quoted. Appellant relies on the recent case of *State v. Scott,* 209 S. C. 61, 38 S. E. (2d) 902. Defendant there contended that the alleged confession was obtained by mistreatment and violence but that element, which was the one relied upon by the defendant, was omitted by the trial Judge in defining what constituted a voluntary confession.

Appellant has also appealed from the order of the trial Judge settling the case for appeal, but we find no error in this order.

As usual in cases of this kind, we have, *in favorem vitae,* carefully examined the record for any errors affecting the substantial rights of the accused, even though not made a ground of appeal. We find none. The jury, which is the body clothed with the duty and responsibility of passing upon the facts, has found appellant guilty

of murder. There being ample evidence to sustain the verdict and finding no errors of law, we are not warranted in disturbing the verdict and sentence imposed.

We think it is appropriate to state that appellant did not employ counsel. The Court appointed three capable and experienced members of the Calhoun County Bar to represent him, which they did in the Court below with commendable zeal and ability. One of these attorneys has earnestly and diligently presented the case on appeal to this Court. Their services are acknowledged with appreciation.

The judgment of the Circuit Court is affirmed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.