Elwood SAWYER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16536.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 15, 1961.

Decided April 19, 1962.

Petition for Rehearing En Banc Denied En Banc May 18, 1962.

Mr. Aloysius B. McCabe, Washington, D. C. (appointed by this court), for appellant.

Mr. Judah Best, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., and Messrs. Nathan J. Paulson and Victor Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, PRETTYMAN, Senior Circuit Judge, and BURGER, Circuit Judge.

PRETTYMAN, Senior Circuit Judge.

This is an appeal from a conviction for robbery, after trial before a jury in the District Court.

On December 30, 1960, a store was held up at gunpoint, and cash was taken from the register. Almost a month later, on January 22, 1961, two young men were arrested in connection with a series of other robberies. Appellant Sawyer was named by them as a participant in the December 30th affair. He was thereupon arrested, taken directly to the office of the Robbery Squad, and confronted by his accusers. A few minutes thereafter he "started talking" and acknowledged his participation in the robbery. Within less than an hour of his arrest the typing of his statement was begun. The arrest was at 3:30 p. m.; the typing was begun at 4:20 p. m.; and the typewritten statement was completed between 4:40 and 4:50 p. m.

Upon the trial counsel for appellant and his co-defendant objected to the admission of the statements, oral and written, on the ground of coercion. The trial judge held a hearing out of the jury's presence; Sawyer testified that he had been abused physically and mentally by the police officers; the Government offered rebuttal testimony; and the trial judge denied the motion to exclude and later admitted the evidence, submitting to the jury the question of voluntariness. Sawyer took the stand and repeated his accusations of beating and mistreatment. The Government again presented rebuttal testimony.

**I**

Upon this appeal the appellant cites and relies upon Mallory v. United States.[1] We find no "Mallory" question in this case. There was no delay, necessary or unnecessary, between the arrest and the confession. As a matter of fact, the objection interposed was not upon the ground of delay but was upon the ground of coercion, and that question was submitted to the jury with instructions to which no objection was taken, or indeed could have been taken.

**II**

Shortly after the events above recited, somewhere between five and six o'clock the day of the arrests, the lady who had been held up in the December 30th robbery was brought to the Robbery Squad Office and immediately identified Sawyer as one of the robbers; she easily identified him because prior to the robbery he had been in the store as a customer. Sawyer recognized her and said she had been standing behind the counter when he entered the store on December 30th and she had her hands in a bucket of water washing something. Both this lady witness and a detective who was present at the confrontation testified to this statement by Sawyer. No objection was made to the testimony of either witness. On this appeal Sawyer argues that this statement by him to the lady was inadmissible because it came too long after his arrest and was the product of a systematic and skillful police interrogation. We find no evidence to support these contentions and no error in the admission of this testimony. As a matter of fact, we think the police activity in

1. 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

394

these respects was proper and commendable. They proceeded at once upon the arrest and initial accusation to check the identification of the accused as made by two admitted accomplices. The lady said the police located her place of employment and reached her "as soon as I got on the job". There was no evidence of a prolonged interrogation of the accused.

### III

Upon the trial Sawyer took the stand in his own behalf. He denied complicity in the December 30th robbery. He testified that he was beaten continuously for twenty or thirty minutes by police officers, until he signed a paper of the contents of which he had no knowledge. He said he had not made any admissions and that he was not identified by the lady witness until the morning after the day of his arrest. One of the young men (Wilbur Queen) who had been arrested earlier in the day, and who implicated Sawyer in the December 30th robbery, took the stand and testified that Sawyer had been beaten by the police and that he (Queen) also had been forced to sign a confession with respect to the December 30th robbery. He denied that Sawyer had been implicated in that robbery. On cross-examination he was shown a written statement bearing his name and said that he had been forced to put Sawyer's name in it. At this point the trial judge interrupted and warned the jury that this statement was not offered as proof of any facts but was received only as bearing upon the credibility of the witness. The court said in part:

"Now on cross examination, which is going on now, for the purpose of affecting the credibility of the witness if he can, the Government is entitled to show, if he can, that on some prior occasion before today, this witness made a statement contradicting what he said on direct examination."

The court further ruled that it would permit cross-examination only on those parts of the statement which the prosecutor claimed contradicted what Queen had said on direct examination.

Similarly the other young man (Thomas Simms) who had been arrested earlier in the day, and who had implicated Sawyer, took the stand and testified that Sawyer was not involved in the December 30th robbery. On cross-examination he was asked whether he had testified before the grand jury and had there stated that Sawyer had participated in the robbery; Simms answered "Yes" to both questions. Without objection the grand jury testimony of this witness was introduced. He was then cross-examined in regard to a statement signed by him, which also implicated Sawyer in the robbery. In respect to both the grand jury minutes and the statement, the court cautioned the jury as it had done in respect to Queen's statement. Not only was no objection made to these three documents, but at one point counsel for the defense insisted that Queen's statement be read to the jury in its entirety. The court was insistent on knowing whether all counsel, that is, the prosecutor and counsel for each of the two defendants, agreed that the whole statement be read to the jury. It concerned the December 30th robbery.

During their deliberations the jurors sent out a request that the exhibits in the case be sent to them. The judge did so. Counsel were not then present, but no objection was interposed when the judge later informed them of what he had done.

The written statement of Simms was a long, discursive account of the activities of a group which he called "the Le Droit Ramblers". It described a large number of robberies, in addition to the one of December 30th in which he named Sawyer as a participant. It did not otherwise name Sawyer. On this appeal appellant says that the court committed reversible error in letting the jury have the full text of the three exhibits. He says that only one sentence in Simms's statement (the sentence relating to the December 30th robbery) was admitted in evidence and that, at the most, that

sentence only should have been sent in to the jury. He says the remainder of Simms's statement was inflammatory and implied that Sawyer was involved in numerous other crimes as a member of a notorious criminal gang.

■■ We think the contentions with respect to Queen's statement and the grand jury minutes have little substance. These documents were admitted in evidence in full without objections, and Queen's statement was read in full text to the jury upon agreement of all counsel. However the action of the trial judge in sending to the jury room that part of the Simms statement which he had refused to admit in evidence was error. We must consider whether the error justifies or requires reversal of the judgment. The proof of Sawyer's guilt was overwhelming. The unreliability of Queen and Simms as witnesses was amply demonstrated. That the three men had participated in the December 30th robbery, at gunpoint, was established beyond peradventure of a doubt. In Simms's statement he described many yokings and robberies, naming many persons as participants in the several crimes. He named Sawyer in connection with only one offense, the December 30th robbery. It does not seem to us that this account, describing other offenses and naming other persons as participants therein, would have affected the jury one way or the other in its duty to determine whether Sawyer was a participant in this one affair on December 30th. Notably he was not named in respect to any other crimes, whereas others were named. The jury was confined to a finding on this one matter—was Sawyer guilty of the December 30th robbery?—and the evidence in respect to that one charge was, as we have said, overwhelming. We are of opinion that under the sum total of the circumstances the fact that the jury had and may have read this statement by Simms in respect to all these other affairs, was not reversible error. It follows that the judgment of conviction is

Affirmed.