### 9925

### WALKER v. HENDERSON ET AL.

### (95 S. E. 337.)

1. APPEAL AND ERROR — PRESUMPTION — EVIDENCE — SEPARATION OF INCOMPETENT TESTIMONY.—Where no effort was made to separate competent from incompetent testimony, it must be presumed that only competent evidence was considered by the Court.

2. TRIAL—EVIDENCE—OBJECTIONS—WHEN TAKEN.—Counsel will not be allowed to take chances on withholding objection to incompetent testimony until heard, and then accept it if favorable to his client or have it stricken out if not.

3. WITNESSES—COMPETENCY—COMMUNICATIONS OF DECEASED.—In an action for partition of real estate of an intestate, plaintiff's testimony as to statements of the deceased regarding sale of lands to him is incompetent under Code Civ. Proc. 1912, sec. 438.

4. WITNESSES—IMPEACHMENT—CONTRADICTION.—Where plaintiff, an uneducated negro, in a partition suit to divide land formerly belonging to his deceased mother, testified that he paid his part of the taxes and she paid hers and they had a joint tax receipt, and the fact was that the tax receipts were in the name of the mother, such discrepancy in testimony was more apparent than real, and could not serve to impeach plaintiff as a witness.

5. PARTITION — EVIDENCE — WEIGHT AND SUFFICENCY. — Plaintiff, in action for partition of land with legal title vested in his deceased mother's estate, *held* to have established parol contract that he was to have a part of the land for tilling and helping pay for the same by proof of his fulfillment of such agreement with his mother's acquiescence and of her intention to convey to him.

Before MEMMINGER, J., Barnwell, Fall term, 1916. Reversed.

Action by Drayton Walker against Malinda Henderson and others, for partition of land of an estate. Judgment for defendant, and plaintiff appeals.

*Mr. Jas. E. Davis,* for appellant.

*Messrs. Raysor & Summers* and *Bates & Simms,* for respondent. *Messrs. Bates & Simms* cite: 82 S. C. 264.

March 13, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action for partition of the real estate of Dianna Reed, who died, intestate, in May, 1914, leaving as her heirs her husband, the defendant, Carolina Reed, two children, the plaintiff and the defendant, Malinda Henderson, and two grandchildren, the defendants, George Small and Janie Frazier, children of a predeceased daughter. She had no children by Reed. The other parties are the offspring of a former marriage to Naro Walker.

At the time of her death, Dianna had legal titles to two tracts of land, 115 acres in Barnwell, and 66 acres in Bamberg. Plaintiff claims that he is entitled to one-half of the 115-acre tract, in his own right, under a parol contract, whereby his mother agreed that, if he would stay on the land and help her to pay for it, she would give him half of it. That claim gave rise to the sole controversy between the parties. The Circuit Court found against plaintiff, and he appealed. The appeal involves only questions of fact.

The parties and witnesses (except the county auditor) are all negroes, and, judging from their testimony, none of them are above the average intelligence of the race. The case was heard upon testimony taken and reported by the master, without any findings. In taking the testimony, no effort was made to separate that which is competent from that which is incompetent, but it was all taken, as offered, with objections and motions to strike out noted, but no rulings thereon, either by the master or by the Circuit Court.

Counsel for appellant contends that the Circuit decision was influenced by the consideration of incompetent testi-

mony, but, in the state of the record just mentioned, we have no means of knowing whether it was or not; therefore, we must presume that only competent evidence was considered.

Plaintiff testified, in substance, that his mother bought the tract some 25 or 30 years ago from Brown, and agreed that, if he would stay on it and help pay for it, she would give him title to half of it; that she put him in possession of one part of the tract, which he has retained ever since, and she kept the other part herself; that each worked and controlled his own part up to a general line that had been agreed on, though, at that time, no definite line had been established; that he built a dwelling house on his part that cost him $1,000, and insured it in his own name for $500; that it was burnt some three or four years ago, and the insurance company paid him the amount of the policy, which he kept; that he paid the purchase price to Brown, who held a mortgage for the purchase money, and paid the taxes on half the land from the time he took possession; that he never paid rent, except when he worked land on his mother's part; that about six months before his mother died, she wanted a definite line established, for the purpose of making him a deed to his part, and she sent for Mr. Mixon, a surveyor, to run and mark the line, and, when Mixon came, his mother claimed that he still owed a balance of $100, and wanted the line run so as to cut off from his part a proportionate amount in value of land, but Mixon told her not to do that, but to divide the tract equally, and take papers for the balance due, and the line was run and staked according to Mixon's advice; that Mixon was to make a plat, but died before he did it, and his mother died soon afterward, and, therefore, no deed was made; that, after the death of his mother, Carolina Reed was appointed administrator of her estate, and in the settlement of her personal estate, he paid the administrator the $100 that his mother claimed that he owed; that he paid the money to Reed in the office of Mr. Buist, a lawyer

since deceased, and that the other defendants were all present. The receipt of the administrator which is in the handwriting of Mr. Buist, reads: "Received of Drayton Walker one hundred dollars due the estate of Dianna Reed for balance due on land Drayton claims to owe her on land."

No objection was made to plaintiff's testimony, until after all of it had been taken. Defendants' counsel then made this statement and motion: "The witness cannot testify as to anything Dianna told him or any conversation between them, and I move to strike that out." No ruling.

The Court should have refused to strike out the testimony so objected to, if, indeed, it can be said to have been objected to at all, on the ground that the objection came too late; for it is well settled that counsel will not be allowed to speculate on chances by withholding objection, until testimony has been heard, and then accept it, if it is favorable to him, or have it stricken out, if it is unfavorable; hence the rule, that incompetent testimony not duly objected to becomes competent.

At the hearing in this Court, counsel for defendants stated that, as plaintiff was an ignorant negro, he was not inclined at first to interpose technical objections to his testimony and thereby prevent him from proving a just and honest claim (which was commendable), but that, before plaintiff had finished, he became satisfied that he was preferring a false claim, and, then, interposed the objection. Nevertheless, it came too late, in the absence of an agreement reserving that right.

But, if objection had been duly made, by far the greater part of plaintiff's testimony is competent. Only that part of it which involves transactions of communications with his mother is incompetent, under section 438 of the Code. He was competent to testify that he paid the purchase money to Brown, that he paid half of the taxes, that he took and held possession of half the land, and the date and extent of his occupancy, the improvements made by him, the insur-

ance of his house, and the collection and retention of the amount of the policy, with the knowledge and acquiescence of his mother, that he paid no rent, that a line between the part occupied by him and that occupied by her was run by a surveyor a short while before she died, for these were independent substantive acts and facts which involved no transaction or communication with the deceased.

Counsel for defendants contend, however, that, even if plaintiff's testimony be considered, it was contradicted in so many particulars as to show that it is unworthy of credence. But the contradictions pointed out are more apparent than real, and were due to plaintiff's ignorance and the consequent inability to express himself clearly and precisely; for instance, take what he said about the payment of taxes—that he had paid his part of the taxes, and, after testifying that his mother divided the tract and put him in possession of his part, he added: "My mother had her part and I had mine, and we had a joint tax receipt." In reply, the county auditor testified that, up to the time of Dianna's death, the whole tract was returned and the taxes were paid in her name. That supposed contradiction is chiefly relied on by counsel for defendants and, also, by the Circuit Court to show that plaintiff's testimony is unworthy of belief, and that his claim is a fabrication from start to finish. But, was there, in fact, a contradiction? Or was there anything more than a mere verbal inaccuracy in plaintiff's statement of the matter? If he paid his part of the taxes and his mother paid her part, they paid them jointly, and it was perfectly natural for a man of his intelligence to say that they had a joint receipt, meaning, merely, one receipt for the taxes jointly paid. While his language may not describe the transaction with technical precision, it was substantially correct. It was also natural and proper for the tract to be returned and the taxes paid in his mother's name, until she made him a deed to his part.

A careful analysis of the evidence will show that, in the main and essential features of plaintiff's testimony, as to the making of the contract, part performance thereof, by putting him into possession and the making of valuable improvements by him, and the payment of his part of the purchase price, he is corroborated not only by the other witnesses—his own and some of the defendants'—but, also, by the undisputed facts and circumstances.

It is not disputed that plaintiff has been in exclusive possession of the part of the tract now claimed by him for more than twenty years, ever since he was first put in possession, without being required to pay rent, except when he worked land on his mother's part, and for that only did she require him to pay rent, as she also did of her daughter, Malinda, when she worked it; that he built a dwelling house on his part and insured it in his own name, and, when it was burnt, the insurance company paid him the amount of the policy, without question, and that he kept the money—all with the knowledge and acquiescence of his mother; nor is it disputed that his mother had the line dividing the tract between them run and marked for the expressed purpose of making him a deed to his part, and that the deed was not made because of the untimely death of the surveyor, followed shortly by that of his mother. These undisputed facts are in entire harmony with plaintiff's claim, and strongly tend to prove it.

Defendants sought to nullify the force of these facts, particularly those about the running of the line with the declared purpose of making a deed to plaintiff for the part occupied by him, by some testimony tending to show that his mother intended to make the deed as an advancement to plaintiff as his share of her real estate. In other words, that she wanted to settle her estate before she died by dividing her lands amongst her prospective heirs. That explanation is far from satisfactory. It is not as consistent with

the undisputed facts and the other evidence as plaintiff's contention is.   Besides, there is no evidence that Dianna intended, at that time, to make deeds to the others, and no division or prospective division of her other lands was made or attempted.   It is also inconsistent with Dianna's claim that plaintiff owed a balance of $100 on his part of the tract. True, defendants say that this claim was for some other obligation.   Even if that were so, she had the right to require payment of it before making the deed.   But the testimony as to any other debt is vague and unsatisfactory.

Moreover, an agreement and situation like that testified to by plaintiff and his witnesses is generally known to the other members of a family.   Reed admits that he knew it (in fact his testimony tends to prove the contract) and the others do not deny knowing it.   Unless they had known it, would Reed have accepted and receipted for the payment, as he did, and would the other heirs, who were present at the settlement, have allowed him to so accept it, without objection or protest that the claim was untrue?   They received the. .benefit of it in that settlement.   Common honesty required them to speak then, or be silent now.

Without doubt the rule is that a claim like plaintiff's ought to be proved by clear and convincing evidence.   That has been done.   While the testimony is conflicting in some respects, most of the conflicts are as to minor details, but there is little conflict as to the essential elements of plaintiff's claim.   The more carefully the evidence is considered and analyzed, the stronger becomes the conviction that plaintiff's claim is just and true, and that the Circuit decree is wrong and ought to be reversed.

Judgment reversed.