16048

STATE v. COOPER
(46 S. E. (2d) 545)

*Messrs. W. D. Jenerette* and *S. R. Pridgen,* of Mullins, and *Mr. Malcolm McLendon,* of Marion, for Appellants,

*Mr. J. Reuben Long,* Solicitor, of Conway, for Respondent.

February 26, 1948.

OXNER, Justice: Upon an indictment charging him with the murder of his wife, Mamie Cooper, appellant was tried at the March, 1947, term of the Court of General Sessions of Marion County. He admitted killing his wife on November 11, 1946, by stabbing and cutting her with a knife, and pleaded self-defense. The trial resulted in a verdict of guilty of murder and appellant was duly sentenced to death by electrocution. From this judgment, he appeals.

The first question to be considered is whether the evidence was sufficient to support a conviction of murder. Appellant contends that the State failed to prove that the offense was committed with malice aforethought and that the highest degree of homicide shown by the evidence is that of manslaughter. The determination of this question necessitates a review of the testimony.

Appellant is a Negro. The record does not disclose his age. The deceased was between twenty-five and thirty years of age. She and appellant had been married approximately two years. During this period she left him on several occasions and they were living separate and apart just prior to the homicide. He was working at Marion and she was cooking for Mr. M. K. McMillan and lived with three other Negro women in a house on the McMillan farm, which is located about two miles from Mullins. Appellant visited his wife there occasionally. After finishing his work for the week, appellant left Marion on Saturday and went to the home of his wife. On the following Monday afternoon between 4 and 5 o'clock, he killed his wife in front of a house on the McMillan farm. Lou Alice Sparks, who lived with her hus-

band and children in this house, and her mother, Arilla Crawford, who was visiting there, were present when the homicide occurred. These two Negroes testified as follows:

After finishing work on the afternoon in question, the deceased called by the Sparks house, which was located near her home, and about five or ten minutes later appellant arrived. He immediately accused his wife of sending for Mr. McMillan for the purpose of having him put off the place. She denied doing so. During this argument Mr. McMillan drove into the yard and asked to see appellant, who then left the house and went into the yard to talk to Mr. McMillan. While they were talking, Arilla Crawford walked out on the porch and the deceased, who with Lou Alice Sparks remained inside, closed all the doors and windows. In a few minutes Mr. McMillan left and appellant returned to the house and inquired, "What's all this about?". Lou Alice Sparks thereupon told appellant that his wife was afraid of him and asked that he leave. Appellant replied, "If you will let me come in, I won't raise a fuss." The women refused to do so. Appellant then pulled and jerked a knob on the door and was finally able to get in. His wife immediately ran and appellant stabbed her in the back as she was leaving the house. The other two women pleaded with him to stop. The deceased was screaming. Appellant pursued her into the yard where he threw her down, placed his knees on her body, and continued to stab and cut. While he was doing so, Arilla Crawford sought to stop him and appellant undertook to cut her. After deceased had been cut and stabbed a number of times with a knife, appellant asked Arilla Crawford to open the door of her car so that he could carry his wife to a doctor. She replied that this would be futile as his wife was dead.

Mr. McMillan testified that appellant came to his home late Sunday afternoon seeking work and he told him that he would let him know the next day whether any work was available; that just as he was leaving home on Monday

afternoon, one of the Negro women who lived with deceased stopped him and stated that the women in the house were afraid of appellant and wanted him to leave; that he then went to the home of the deceased and there ascertained that appellant was at the Sparks' house, a short distance away; that he proceeded to the Sparks' home where he advised appellant that he could commence work on Wednesday morning but that the women in the house where his wife lived wanted him to leave; that appellant thanked him for the job and stated that he was agreeable to leaving the house in question; that appellant appeared calm and showed no signs of anger; and that at the conclusion of this conversation he left and was not present when the homicide occurred.

The physician who examined the body of the deceased testified that there were twelve wounds, three of which were of such serious nature that any one of them was probably sufficient to have caused death; that there were four stab wounds in the back and a stab wound in the neck; and that there were incised wounds on the legs, hip and various other parts of the body.

Appellant was the only witness for the defense. He testified that shortly after arriving at the Sparks' house, his wife commenced quarreling with Arilla Crawford because on the day before he had driven Arilla in her car to Horry County to see her son; that shortly thereafter he asked his wife whether she had sent for Mr. McMillan and she denied doing so; that in a few minutes Mr. McMillan arrived and the conversation in the yard heretofore related took place; that after Mr. McMillan left he returned to the house and commenced talking to Arilla Crawford who was sitting on the porch; and that his wife came around the house, asked Arilla what they were talking about, became enraged, struck him, and they commenced fighting. When appellant was asked on cross-examination why he cut his wife, he said: "Well, I was mad at the time." He stated that he was re-

jected for service in the army because he was of a "nervous nature", and said that when he was engaged in the fight with his wife he did not know what he was doing. It is admitted that after the homicide appellant voluntarily came to Marion and surrendered to the officers.

We think the above facts and circumstances constitute sufficient evidence upon which to base a finding of murder. While malice is an essential ingredient of murder and in order to constitute that offense the killing must be done with "malice aforethought", it is well established that malice need not exist for any particular length of time prior to the killing. The question was before us in the recent case of *State v. Judge,* 208 S. C. 497, 38 S. E. (2d) 715. We there quoted with approval the following from *State v. Milam,* 88 S. C. 127, 70 S. E. 447, 449: "The authorities agree that it (malice) need not exist for any appreciable period of time before the commission of the act, —indeed, it may be conceived at the very moment the fatal blow is given. It is sufficient in law if the combination of the evil intent and act produce the fatal result." The evidence here reveals a shocking and brutal killing and the attending circumstances were such as to justify a conclusion that it was done without legal justification, excuse, or extenuation.

Appellant did not employ counsel. When the Court convened on Monday, the presiding Judge appointed three members of the Marion County Bar to represent him and the case was set down for trial on Thursday. Section 980 of the 1942 Code provides that where a person indicted for a capital offense desires counsel, the Court "is authorized and required, immediately upon his request, to assign to such person such and so many counsel, not exceeding two, as the presiding judge shall designate." We may add that counsel so appointed serve without compensation and this duty has been uniformly discharged by the members of the Bar of this State with great credit to the legal

profession. It is contended that under this statute it is error for the presiding judge to appoint more than two attorneys to represent the accused in a capital case but we do not think this construction is warranted. There is no limitation in this State on the number of attorneys which a defendant may employ and we do not think the Legislature intended by this statute to impose any limitation on the power of the court to appoint counsel. The question is also raised that appellant was prejudiced by the appointment of three attorneys in that the impression was thereby created that the trial Judge regarded the offense as an unduly grave one which probably warranted the extreme penalty. It is true that the appointment of too many attorneys might under certain circumstances create an impression unfavorable to the accused and also result in too broad a division of responsibility. Certainly it would be unwise for the court to undertake to appoint the entire bar of a county to represent a defendant. In the instant case, however, we are satisfied that appellant was not prejudiced by the appointment of three attorneys to represent him. Under all the circumstances we think the discretion of the trial Judge was wisely exercised.

It is next contended that counsel were not allowed sufficient time to locate and confer with witnesses, investigate the prospective jurors, and otherwise properly prepare the case for trial. The case was tried three days after they were appointed. There was no motion for a continuance and no request was ever made for additional time in which to prepare for trial. We find no merit in this contention.

Error is imputed to the trial Judge in failing to examine the jurors on their voir dire. As each juror was presented, the Court inquired whether he was opposed to capital punishment. There was no request for any further examination and no motion was made that the prospective jurors be placed on their voir dire. The statute, Section 637, Code of 1942, provides that the Court shall,

on motion of either party, examine under oath the prospective jurors with respect to their competency. Where there is no such motion or request, the omission to make a voir dire examination cannot be assigned as error. *State v. Merriman,* 34 S. C. 16, 12 S. E. 619; *State v. Gidron,* S. C., 45 S. E. (2d) 587.

The next exception assigns error on the part of the Court in refusing to grant a new trial upon the ground that one of the jurors who sat on the case, F. B. Stanley, was disqualified to serve. The motion for a new trial on this ground was based upon an affidavit by Mr. Stanley in which he stated that on August 28, 1944, as alderman of the town of Marion, he presided over the municipal court in the absence of the mayor; that appellant was tried before him without a jury and found guilty of attempting to beat an officer and of resisting arrest and on each of these charges a sentence of imprisonment for thirty days or a fine of $100.00 was imposed; that at the same time appellant was also convicted of disorderly conduct and sentenced to pay a fine of $27.00 or to serve thirty days' imprisonment; that "the trouble out of which the above charges grew was a beating inflicted by James Cooper on his wife, Mamie Cooper"; and that when sitting on the jury he recognized appellant as the same person whom he had previously tried and sentenced. Although Mr. Stanley made this affidavit at the request of appellant's counsel, it will be observed that he does not state that he was conscious of any bias or prejudice against appellant by reason of the matters set forth in his affidavit. The fact that several years previously Mr. Stanley presided over a court in which appellant was convicted of the misdemeanors mentioned did not disqualify him to sit on this case in the absence of some showing that by reason thereof he was biased or prejudiced, although such might have been a good reason for the exercise by appellant of one of his peremptory challenges. But even if we regard these circumstances in the nature of a

disqualification, the facts were known to appellant, or by the exercise of due diligence should have been known to him, and he will not be permitted to complain after the rendition of a verdict adverse to him. *State v. Parsons,* 171 S. C. 449, 172 S. E. 424; *State v. Gregory et al.,* 171 S. C. 335, 172 S. E. 692; *State v. Amburgey,* 206 S. C. 426, 34 S. E. (2d) 779.

The last issue raised by this appeal relates to the refusal of the trial Judge to strike the following testimony offered by the State: Two Negro women lived in the house with deceased testified without objection that on Sunday night preceding the homicide she had some money in a sack pinned inside her clothes on her bosom and that shortly after the homicide they saw the sack, blood-stained and empty, lying near the place where the deceased was killed. At the conclusion of the State's testimony, appellant's counsel moved to strike this testimony. The motion was denied. If appellant's counsel felt that this testimony was irrelevant or prejudicial, an objection should have been interposed when it was offered. *Powers v. Standard Oil Co.,* 53 S. C. 358, 31 S. E. 276; *Walker v. Henderson et al.,* 109 S. C. 160, 95 S. E. 337; *Rice v. Brandon Corporation,* 190 S. C. 229, 2 S. E. (2d) 740. The testimony having been received without objection, the motion to strike was addressed to the sound discretion of the trial Judge. *Fabian v. Rephan,* 192 S. C. 483, 7 S. E. (2d) 223; *In re Limehouse's Estate,* 198 S. C. 15, 16 S. E. (2d) 1. We find no abuse of discretion. Moreover, the admission of this testimony could hardly have been prejudicial to appellant.

As usual in cases involving the death penalty, we have made a careful and painstaking examination of this record for the purpose of determining whether there were any prejudicial errors not raised by the exceptions. We find none. All rights of appellant were fully protected by the attorneys appointed to represent him, who discharged their duties with commendable zeal and ability.

70

All exceptions are overruled and the judgment below is affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.