675 S.E.2d 801

**Donald Reese CAMPBELL, Respondent,**

**v.**

**Wendy L. JORDAN a/k/a Wendy Jean Lynch Jordan; Mary Alice Richardson; Elizabeth L. Langley a/k/a Elizabeth Ann Lynch and Harvey R. Campbell, Defendants,**

**Of whom Wendy L. Jordan a/k/a Wendy Jean Lynch Jordan and Elizabeth L. Langley a/k/a Elizabeth Ann Lynch are the Appellants.**

**No. 4517.**

Court of Appeals of South Carolina.

Submitted Feb. 4, 2009.

Decided March 12, 2009.

Rehearing Denied May 5, 2009.

446

David W. Keller and C. Pierce Campbell, of Florence, for Appellants.

John R. Chase, of Florence and Sarah Patrick Spruill, of Columbia, for Respondent.

GEATHERS, J.:

Donald Campbell ("Donald") instituted this partition action against his two siblings, Mary Alice Richardson and Harvey Campbell, and his two nieces, Wendy Jordan and Elizabeth Langley ("the nieces"). After ruling that an in kind partition was appropriate, the special referee ordered that the real property be surveyed and subdivided. On appeal, the nieces claim the special referee erred in refusing to consider their emotional attachment to the property awarded to Donald, in refusing to strike certain testimony from the record, and in ordering the nieces' mother, Betty Jean ("Betty Jean"), to remove her mobile home from Donald's property. We affirm.

## FACTS

The subject property in this appeal consists of four parcels of land in Darlington and Florence Counties. The title to the property passed from Donald's father, the late Mr. Melvin Campbell Sr., to his widow and their six children [1] upon his death on October 18, 1980. At this time, the children deeded the property to their mother for life, while retaining their respective remainder interests upon her death. Mrs. Campbell later died intestate and her interest passed to her children in equal shares. Through a series of transfers, the property was owned in the following percentages when Donald instituted this partition action: Mary Alice Richardson, 11/36; Har-

---

1. The late Mr. and Mrs. Campbell's children include: Mary Alice Richardson, Betty Jean David, Harvey Campbell, Donald Campbell, the late Melvin Campbell, Jr., and Geraldine Player.

vey Campbell, 11/36; Donald Campbell, 8/36; Wendy Jordan, 3/36; and Elizabeth Langley, 3/36.[2]

Three of the four parcels are unoccupied farmland. The Darlington County parcel consists of thirty-three acres and contains merchantable timber worth approximately $2,000–3,000. One of the Florence County parcels consists of approximately forty-two acres and contains merchantable timber worth approximately $6,500–7,500. The two remaining adjoining Florence County parcels total seventy-five acres and are divided by Lamar Highway.[3] The fifty-acre parcel lying west of Lamar Highway is unoccupied farmland, while the twenty-five acre parcel lying east of Lamar Highway (hereinafter referred to as "the Homeplace") is occupied by the parties or members of the parties' families.

On September 15, 2005, Donald commenced an in rem proceeding to partition the property.[4] After conducting a formal hearing and several conferences between the court and counsel, the special referee issued his order on December 7, 2007. In holding that an in kind partition is preferred at law if the land can be fairly and equitably divided, the special

---

2. At various times after the late Mrs. Campbell's death, three of the sibling transferred their interests, resulting in the above-stated ownership interests on the date of the hearing. The transfers were as follows: Melvin Jr. transferred his share to his siblings, Mary Alice and Harvey; Geraldine transferred her share to her siblings, Mary Alice, Harvey, and Donald; and Betty Jean transferred her share to her daughters, Wendy and Elizabeth.

3. The special referee noted the discrepancy between the tax map diagram and the property deed's depiction of the total acreage of the contiguous Florence County parcels and concluded the total acreage consisted of seventy-five acres, rather than ninety-six acres. While the nieces state the special referee did not explain his conclusion, they make only a conclusory statement on appeal, and thus the referee's finding is the law of the case. *See Charleston Lumber Co., Inc. v. Miller Hous. Corp.*, 338 S.C. 171, 175, 525 S.E.2d 869, 871 (2000) (stating an unchallenged ruling, right or wrong, is the law of the case); *see also Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

4. As governed by S.C.Code Ann. §§ 15–61–10 to –110 (2005 & Supp. 2008) and Rules 17 and 71, SCRCP.

referee acknowledged that the property had been in the family for three decades and that three of the late Mr. Melvin Campbell Sr.'s descendants currently reside on the property. Because equitable and economic considerations warranted an in kind partition, the special referee allotted each of the parties a portion of the subject property based on the parties' testimony at the hearing, their respective ownership interests, and their improvements to and utilization of the land.

In awarding the majority of the Homeplace to Donald,[5] the special referee found that the improvements made to the Homeplace by Donald and Harvey Campbell's son were more substantial in nature than those of the other parties. Specifically, Donald has affixed to the property a double-wide mobile home, a fenced-in horse corral, and three outbuildings, one of the buildings being a water pump house constructed by Donald and used by Donald's family and Betty Jean. The special referee acknowledged that Betty Jean also lived on the Homeplace in a single-wide mobile home. However, the special referee found that because her residence was not permanently affixed to the Homeplace and she had not resided there as long as Donald, her improvements and contributions to the Homeplace were less substantial than those of Donald. Accordingly, the special referee ordered that the real property be surveyed and subdivided so that each party received a commensurate ownership interest.

## ISSUES ON APPEAL

On appeal, the nieces claim the special referee erred in refusing to consider their emotional attachment to the portion of the Homeplace awarded to Donald, in refusing to strike certain testimony from the record, and in ordering Betty Jean to remove her mobile home from the Homeplace. We disagree.

---

5. Harvey Campbell's son occupies eight and one-half acres in the northernmost portion of the Homeplace, which the special referee awarded to Harvey Campbell. The nieces are not arguing to overturn this aspect of the order as they set forth no specific argument on why awarding this portion of the Homeplace to Harvey Campbell would be inequitable to them.

## LAW/ANALYSIS

### I. Partition

■ The nieces argue the special referee erred in awarding the Homeplace to Donald because the special referee failed to consider their emotional attachment to that portion of the property, which resulted in disparate treatment of the parties. We disagree.

■ A partition action is an equitable action and, as such, this Court may find facts in accordance with its view of the preponderance of the evidence. *Zimmerman v. Marsh*, 365 S.C. 383, 386, 618 S.E.2d 898, 900 (2005). The partition procedure must be fair and equitable to all parties of the action. *Pruitt v. Pruitt*, 298 S.C. 411, 414, 380 S.E.2d 862, 864 (Ct.App.1989). This Court has previously stated that partition in kind is favored when it can be fairly made without injury to the parties. *Anderson v. Anderson*, 299 S.C. 110, 114, 382 S.E.2d 897, 899 (1989). Furthermore, equitable considerations such as the length of ownership and sentimental attachment to property may be considered in a partition action, but the pecuniary interests of all of the parties is the determining factor in deciding whether to require a judicial sale or to allow a partition by allotment. *Zimmerman*, 365 S.C. at 388, 618 S.E.2d at 901.

The special referee properly partitioned the property in a manner that was fair and equitable to all the parties. The special referee considered the parties' emotional attachment to the land when he specifically recognized the family's long-standing ownership of the property, the parties' respective living situations, and the parties' preference for a partition in kind rather than a judicial sale. Citing to *Zimmerman v. Marsh*, 365 S.C. 383, 388, 618 S.E.2d 898, 901 (2005), the special referee also stated that partition was justified on economic grounds, as the pecuniary interests of all parties would be best served by dividing the property in this manner.

The nieces argue they are unhappy with the distribution because their mother, Betty Jean, lived a significant portion of her life at the Homeplace. Because of this history and their emotional attachment to the land, it has a greater inherent value to them. Accordingly, the nieces argue that we must

redistribute the property or order a judicial sale to account for the disparity in value. However, no evidence of any current property values is in the record, and the nieces fail to assert that the special referee erred in assigning property values or in assigning ownership interest shares to each party. *See Wilson v. McGuire*, 320 S.C. 137, 139 n. 2, 463 S.E.2d 614, 616 n. 2 (Ct.App.1995) (stating that the allocation of a preselected tract to one heir is not prejudicial to other heirs unless evidence is presented to demonstrate that the preselected tract is more valuable than the other tracts).

Further, the special referee's award of the Homeplace to Donald is supported by the record. Donald has lived on this portion of the family property for his entire life. In contrast, one of the nieces, Elizabeth, testified she had only lived there for three months when she was a baby. As noted in the special referee's order, Donald has made the most significant improvements to the Homeplace as he has permanently affixed to the property a double-wide mobile home with a carport, a barn, a fenced-in horse corral, and three outbuildings. Both the water and the electricity running to Donald's and Betty Jean's home are a result of Donald's efforts, as Donald built the well and connected Betty Jean's home to his pre-existing power and utility lines. Furthermore, we must reiterate that it is the nieces, not Betty Jean, who have a legal interest in the property. While the special referee properly considered Betty Jean's living situation in the overall award, because she is not a party to the action, her interests are not paramount in the final determination.

After considering the equities and the pecuniary interests of the parties, we find the special referee was fair and equitable in the overall partition of the property, including the allotment of the Homeplace to Donald.

## II. Admissibility of Evidence

The nieces next assert the special referee erred in failing to strike irrelevant testimony about the circumstances surrounding the transfer of Betty Jean's property to the nieces. We disagree.

The decision to admit or exclude evidence is within the trial court's sound discretion and will not be disturbed on

appeal absent an abuse of discretion. *Gamble v. Int'l Paper Realty Corp. of S.C.*, 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996). To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice. *Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen & Assocs., Inc.*, 347 S.C. 545, 559, 556 S.E.2d 718, 726 (Ct.App.2001). When improperly admitted evidence is merely cumulative, no prejudice exists, and therefore, the admission is not reversible error. *See Creech v. S.C. Wildlife Marine Res. Dept.*, 328 S.C. 24, 35, 491 S.E.2d 571, 576 (1997) (finding challenged evidence was simply one additional, minor piece of evidence, so even though it was irrelevant, its admission did not constitute reversible error). Further, if a party deems testimony to be irrelevant or prejudicial, an objection should be interposed when the testimony is initially offered. *State v. Cooper*, 212 S.C. 61, 69, 46 S.E.2d 545, 548 (1948). If testimony is received without objection, the motion to strike is then addressed to the sound discretion of the trial court. *Id.*

The testimony the nieces object to was first elicited when Donald testified. When questioned as to what Betty Jean had done with her ownership interest in the property, Donald responded, "She put her land in her daughters' name so she could draw a check." Neither party objected to this testimony. Later, during cross-examination of Donald's niece, Donald's counsel asked, "Isn't it a fact that the only reason [Betty Jean] put [the property] into your name was to avoid claims of any kind of government agency from whom she was going to be receiving assistance?" The nieces' counsel objected on the grounds of relevance.

The objection to this testimony was not timely raised as Donald gave the same testimony during his direct examination and no one objected at that time. *See Cooper*, 212 S.C. at 69, 46 S.E.2d at 548 (stating if a party deems testimony to be irrelevant or prejudicial, an objection should be raised when the testimony is initially offered). The nieces' failure to timely object when this testimony was initially offered waives their right to argue error on appeal. *See City of Greenville v. Bryant*, 257 S.C. 448, 454, 186 S.E.2d 236, 238 (1972) (stating that failure to timely object to introduction of evidence consti-

tuted waiver of argument on appeal); *Parr v. Gaines,* 309 S.C. 477, 481, 424 S.E.2d 515, 518 (Ct.App.1992) ("Although limited exceptions exist, objections to the admission of evidence must be made when evidence is presented at trial to preserve the error for appeal.").

 Even if the nieces had preserved this issue for review, we find the special referee did not err in refusing to strike the testimony from the record. While the nieces argue that the special referee was biased and improperly influenced due to the "highly suggestive" nature of these questions, they have failed to demonstrate that they were prejudiced by this testimony. In response to the nieces' objection, the special referee specifically stated that he could direct the testimony to be struck, but he would have to hear the testimony regardless of its admissibility.[6] Further, the special referee stated twice that this testimony made no difference in his decision as there was no jury to consider the testimony. *See Anderson,* 299 S.C. at 114, 382 S.E.2d at 899 (stating that a partition action is an equitable matter that is tried by a judge alone). The nieces have failed to specify any portions of the order where the special referee relied on this testimony in reaching its conclusion, and there is no indication from the order's plain language that this testimony influenced his decision.

Additionally, when the nieces' counsel did object, the special referee acknowledged that this testimony was already in the record when he stated that the "cat was already out of the bag." Because this testimony was merely cumulative to Donald's prior testimony, which was not objected to, any error in the admission of this testimony is harmless. *See State v. Schumpert,* 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993) (finding any error in admission of evidence cumulative to other unobjected-to evidence is harmless). Consequently, the special referee did not abuse his discretion in denying the nieces'

---

6. We note that even if the special referee chose to exclude this testimony, it would have to be introduced on the record before this Court could consider this argument on appeal. *See Baber v. Greenville County,* 327 S.C. 31, 41, 488 S.E.2d 314, 319 (1997) ("Absent a proffer, it is impossible for this Court to determine the effect of the excluded testimony.").

motion to strike the testimony as the nieces have failed to demonstrate they were prejudiced by the admission of this testimony.

### III. Personal Jurisdiction

██ Last, the nieces contend the special referee erred in asserting personal jurisdiction over their mother, Betty Jean, for purposes of ordering the removal of Betty Jean's mobile home from the Homeplace. We disagree.

South Carolina Code Ann. § 15–61–50 (Supp.2008) vests a special referee with jurisdiction to hear a partition action. This section states, "The court of common pleas has jurisdiction in all cases of real and personal estates held in joint tenancy or in common to make partition in kind or by allotment to one or more of the parties upon their accounting to the other parties in interest for their respective shares . . . ." § 15–61–50.

██ A partition action is analogous to a proceeding in rem. *Pinckney v. Atkins,* 317 S.C. 340, 343 n. 4, 454 S.E.2d 339, 341 n. 4 (Ct.App.1995) (citing 59A Am.Jur.2d *Partition* § 100 (1987)). It is more precisely described as a proceeding quasi in rem, as the judgment deals with the status, ownership, or liability of the particular property and operates as between the parties to the proceedings. 59A Am.Jur.2d *Partition* § 85 (2008). Thus, it is distinguishable from a proceeding strictly in rem, which determines rights in a specific property against the entire world and is equally binding upon everyone. 59A Am.Jur.2d *Partition* § 85 (2008). Accordingly, the court must have both in rem jurisdiction and personal jurisdiction in a partition action. *See Hisle v. Lexington–Fayette Urban County Gov't,* 258 S.W.3d 422, 431 (Ky.Ct.App. 2008) (citing 68 C.J.S. *Partition* § 67 (2007); 59A Am.Jur.2d *Partition* § 108) (finding that although a partition action is in the nature of an in rem proceeding, it also has characteristics of a quasi in rem proceeding because it deals with the title to realty and operates as to the parties in the proceeding, thus requiring both in rem subject matter jurisdiction and personal jurisdiction).

The special referee had jurisdiction to partition the property pursuant to Section 15–61–50 and incidentally to allot certain portions of the property to the respective parties in the action. While the special referee did not have personal jurisdiction over Betty Jean, as she had no interest in the subject property and therefore was not a party to the action, we do not read the order as an attempt to forcibly remove Betty Jean from her home.

The language in the order to which the nieces object states, "the Defendants Jordan and Langley shall have an additional period of ninety (90) days, **should they wish to avail themselves of it,** to move the mobile home in which their mother resides, together with her storage building, to the property allotted to them or otherwise **as they and she may agree.**" (emphasis added). We hold the special referee's order permits the nieces to remove Betty Jean's mobile home within ninety days of the order in whatever manner and to whichever alternate location as Betty Jean and the nieces deem appropriate. The special referee's order is not an attempt to assert personal jurisdiction over Betty Jean, but is rather a grace period for allowing her to remove the mobile home before Donald can institute a separate action to forcibly remove Betty Jean from the Homeplace should he decide to pursue this course of action. Consequently, the special referee did not attempt to assert personal jurisdiction over Betty Jean, and the nieces' argument on this issue is without merit.

## CONCLUSION

Based on the foregoing, the special referee's decision is

**AFFIRMED.**

SHORT and THOMAS, JJ. concur.[7]

---

7. We decide this case without oral argument pursuant to Rule 215, SCACR.