**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Lena Sue Yarborough, Appellant,

v.

Joel F. Yarborough, III, Respondent.

Appellate Case No. 2024-000162

———

Appeal From Newberry County
Charles M. Watson, Jr., Special Referee

———

Unpublished Opinion No. 2025-UP-125
Submitted March 3, 2025 – Filed April 9, 2025

———

**REVERSED**

———

Beth B. Richardson and Sarah Cameron Frierson, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Appellant.

Charles V. Verner, of Newberry, for Respondent.

———

**PER CURIAM:** In this action for partition, Lena Sue Yarborough appeals the special referee's order denying her proposed subdivision of the subject property also owned by Joel F. Yarborough, III, arguing the referee erred in (1) finding her proposed subdivision was not fair and equitable; (2) failing to shift the burden of proof to Joel after Lena met her burden of proof; (3) finding the proposed

subdivision was not equitable based on factors that did not affect the fair market value of the property; (4) making factually flawed conclusions; and (5) awarding allotment to Joel when he did not request it. We reverse.

**FACTS**

The parties inherited property from their mother including, *inter alia*, a timber tract in Fairfield County (the Fairfield tract).[1] The parties agreed Joel owned a 61.1 percent interest and Lena owned a 38.9 percent interest in the Fairfield tract. Lena filed this action, seeking partition in kind or by allotment of the Fairfield tract, or in the alternative, a declaratory judgment of the rights and responsibilities of the parties with respect to their ownership share. In his answer, Joel admitted "the property should be equitably partitioned, in kind, where possible . . . ."

Benjamin Royer, Lena's expert witness, qualified as an expert in real estate and timber appraisal. Royer opined the tract, 143.11 acres, was "very normal timberland" with a stream that bisected the property and normal terrain and further opined the "highest and best use" of the tract was as timberland. He appraised the tract at $442,200, which the parties stipulated was the correct value. Royer recommended a subdivision of the property based on the parties' ownership percentages, dividing it into Tract A for Joel, consisting of 94.3 acres and valued at $280,270 and Tract B for Lena, consisting of 48.6 acres and valued at $178,762.[2] In making his valuation, Royer made an adjustment to Tract A based on soil stability.[3]

Royer testified the subdivision was fair and equitable and that in making his appraisal, he considered the physical characteristics of each tract, including timber types; soils and soil topography; the drains and streams on each tract; road frontage; and the ability of each subdivided tract to "conform to standards in the marketplace for similar property." When asked why he did not carve out a simple geometrical rectangle from the western portion of the Fairfield tract for Lena, Royer testified he subdivided the tract in what was, in his opinion, the most market-conforming method. He also stated he could not determine if such a

---

[1] The parties are also litigating ownership of a timber tract in Newberry County.
[2] At $459,032, the appraised value if subdivided is slightly greater than the appraised value of the Fairfield Tract.
[3] Royer testified Tract A suffered "a little bit in terms of soil quality"; thus, he reduced the acreage to Tract B from its percentage share to account for Tract A's soil quality.

proposed subdivision would be fair and equitable because he had not analyzed the fiscal impact of such a subdivision.  He explained he struggled to find an equitable subdivision, drawing numerous shapes and analyzing the topographies.  On redirect, Royer testified the proposed subdivision was not perfect, but it was his "opinion of what the most fair and equitable division of the property would be."

Joel testified that proposed Tract B, Lena's proposed tract, was the northeastern diamond of the property and contained all of the roads.  Joel concluded the proposed subdivision was not fair to him because his tract was "just hills and gullies."  He also testified he did not think he had permission to use an easement access road, and he did not believe he could put a roadway across his subdivided tract to get to the back of the property.  He claimed he would prefer Tract B if able to choose one of the proposed tracts.  Joel testified he was willing to buy his sister's share of the Fairfield Tract at the stipulated appraised value.  Joel admitted he did not prepare or perform an economic analysis, a formal description of the property, or a timber inventory of the Fairfield Tract.  Joel introduced the testimony of Michael Mannel, a wood dealer, logger, timber buyer, and machine operator.  Mannel, a good friend of Joel's, testified he reviewed the proposed distribution of the property and opined Tract B was the flattest and most accessible part of the property, which he explained was the "absolutely most important" consideration for timbering.  Mannel claimed the soil on Tract A was sandy and soft, which made travel difficult for a truck and made the area inaccessible except for two or three months per year.  Mannel testified he would select Tract B over Tract A because it was more accessible.

By order filed January 9, 2024, the special referee found the proposed division was not fair and equitable.  The referee found the division awarded "virtually all of the high, flat ground to [Lena], while [Joel's] portion of the tract would consist of a lot of gullies and creeks."  In addition, the referee found that under the proposed division, approximately 25% of the value of Joel's portion consisted of hardwood trees on a small portion of the property, which was separated from the remainder of his portion by a stream and was difficult to harvest.  The referee also found that Joel had proposed a subdivision during pre-trial discussion that was also not proven to be equitable because there was no evidence of the value of the different components.  Finally, the referee noted he was unable to configure an equitable division; thus, he ordered Joel, who indicated a willingness to pay the agreed-upon value, to purchase Lena's share.  In an order denying Lena's motion to reconsider, the referee noted Royer gave little consideration to the topography of the land; however, the referee "chose to give the comparative topographies greater weight . . . ."  The referee also found he had the authority to order allotment despite Joel's

failure to request it because Lena requested "'a partition in kind or by allotment' herself." This appeal followed.

**STANDARD OF REVIEW**

"A partition action is an equitable action, heard by a judge alone and, as such, [an appellate court] on review may find facts in accordance with its view of the preponderance of the evidence." *Anderson v. Anderson*, 299 S.C. 110, 113, 382 S.E.2d 897, 899 (1989) (citing *Ackerman v. Heard*, 287 S.C. 626, 340 S.E.2d 560 (Ct. App. 1986)).

**LAW/ANALYSIS**

### 1. Award of Allotment[4]

Lena argues the special referee erred in finding she did not satisfy her burden of proving her proposed subdivision would be fair and equitable where she presented uncontroverted expert testimony that the proposed subdivision would result in no pecuniary injury to any party. In addition, she argues the special referee erred in applying factors of topography and ease of access to find the proposed subdivision was not equitable where those factors were not proven to affect the fair market value of the proposed tracts. Lena next argues that when she moved to reconsider on this issue, the referee "doubled down on the differences in topography as his determinative consideration."[5] She also argues the special referee's factual conclusions on the ease of harvesting timber on the subdivided properties were factually flawed. Joel argues the factors in the Clementa C. Pinckney Uniform Partition of Heirs' Property Act (the Act) apply and the evidence supports the referee's findings. *See* S.C. Code § 15-61-390(A) (2005 & Supp. 2024) (providing factors to consider in partitioning property under the Act).[6] After our own view of the preponderance of the evidence, we reverse.

---

[4] We combine Lena's first, third, and fourth issues.

[5] Lena notes the referee's orders "disregarded all case law and failed to include a single citation to support his decision in either [o]rder."

[6] The referee found the Act did not apply, and Joel did not appeal this ruling; thus, the ruling is law of the case. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) (stating "an unappealed ruling, right or wrong, is the law of the case"). We also find no merit to Joel's argument that equity favors allotment to him due to his "sweat equity" in the property. This was neither argued at trial nor mentioned by the referee. Furthermore, Joel

A trial court may partition jointly held property "in kind or by allotment[,] . . . or, in case partition in kind or by allotment cannot be fairly and impartially made and without injury to any of the parties in interest, by the sale of the property and the division of the proceeds according to the rights of the parties." S.C. Code Ann. § 15-61-50 (2005). There is a statutory preference for in kind partition. *Anderson*, 299 S.C. at 114, 382 S.E.2d at 899; *see Wilson v. McGuire*, 320 S.C. 137, 141, 463 S.E.2d 614, 616 (Ct. App. 1995) (stating our supreme court "recognized in *Anderson* that even though in-kind partitions are appropriate only where they may be made fairly and impartially without injury to any of the parties, there remains a statutory preference for in-kind partitions"). "[P]artition in kind is favored when it can be fairly made without injury to the parties." *Anderson*, 299 S.C. at 114, 382 S.E.2d at 899 (citing *Smith v. Pearson*, 210 S.C. 524, 531, 43 S.E.2d 479, 482 (1947)). "[T]he party seeking a partition by sale carries the burden of proof to show that partition in kind is not practicable or expedient." *Id.* (citing *Pearson*, 210 S.C. at 531, 43 S.E.2d at 482).

We find guidance from *Wilson*, in which this court reversed the trial judge's order of partition by sale,[7] which found partition in kind "was not feasible because it could not be done fairly." 320 S.C. at 141, 463 S.E.2d at 616. This court found the trial judge,

> without examining the commissioners or taking additional evidence, rejected the majority report and held a partition in-kind was not feasible because it could not be done fairly. He criticized the majority report for the following reasons: (1) the three parcels designated for appellants had road frontage whereas other tracts did not; (2) the three parcels allocated to appellants were closer to available water and sewer service than other parcels; (3) respondent . . . was allotted two parcels on opposite ends of the 135 acre tract; (4) the two parcels allocated to

_____

obtained benefits of that sweat equity from harvesting timber on the property during the parties' mother's lifetime and sharing in the proceeds therefrom.
[7] The procedural posture in *Wilson* involved a writ of partition to five commissioners, a majority of whom created a report in which they (1) found the land could be equitably divided in-kind, and (2) presented a survey of a proposed division. *Wilson*, 320 S.C. at 139, 463 S.E.2d at 615-16.

[certain] heirs were oddly shaped; and (5) there was no
notation of any flood plain or any consideration given to
how it would affect the value of the property.

*Id*. at 141, 463 S.E.2d at 616-17. This court reversed, stating "these features affect
the value of the allocated parcels, not the feasibility of dividing the tract in-kind."
*Id*. at 142, 463 S.E.2d at 617. The court noted "[n]either the minority report nor
the trial court's order compares values of the various parcels as proposed in the
majority report. Without such a comparison, we are unable to determine that the
proposed partition in-kind is inequitable." *Id*. The court concluded, "[e]xcept for
the fact the trial court does not like the configuration of the tracts allocated to
[certain heirs], nowhere in the record is there competent evidence that these tracts
are less valuable than the tracts allocated to the other heirs." *Id*.

We agree with Lena that the special referee focused exclusively on the physical
characteristics and topography of the proposed tracts as they related to timber
harvesting in deciding not to partition the property in kind. Here, Lena presented
the only evidence of the valuation of the property as one tract and as subdivided
via Royer's testimony, during which he opined the proposed subdivision was fair
and equitable. As the referee noted, Joel presented no evidence of the values of the
subdivided tracts and admitted he thought the Fairfield Tract could be divided. We
find the special referee erred in not awarding partition in kind. *See Campbell v.
Jordan*, 382 S.C. 445, 451-52, 675 S.E.2d 801, 804-05 (Ct. App. 2009) (affirming
the special referee's partition in kind of four parcels of land with differing
topography where the referee "stated that partition was justified on economic
grounds, as the pecuniary interests of all parties would be best served by dividing
the property in this manner").

## 2. Remaining Issues

Based on our finding that Lena was entitled to partition in kind, we decline to
reach her remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*,
335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address an appellant's
remaining issues where the disposition of a prior issue was dispositive).

## CONCLUSION

For the foregoing reasons, we find Lena was entitled to partition in kind as
proposed; thus, the order on appeal is

**REVERSED.**[8]

**THOMAS, HEWITT, and CURTIS, JJ., concur.**

---

[8] We decide this case without oral argument pursuant to Rule 215, SCACR.